May it please the Court, I'm Terrence Cassidy on behalf of Appellants, Defendants, Governor Schwarzenegger, and Board of Parole Hearings Commissioner Robert Doyle. This morning I wish to address three primary issues. One, we have recently filed a request for judicial notice. I'll explain that. Second, I would like to address the standard of review before this Court in reviewing the District Court's granting of the motion for class certification. And third, I'd like to explain in further detail, follow up on our briefs, why the District Court prematurely granted class certification in this case. Initially, Your Honors, yesterday we did submit a request for judicial notice to bring the Court up to date with respect to the status of the pleadings in this case. The reason for that and the reason we believe it is significant, there is a companion case in which that request was filed, and I apologize for the delay in bringing this to the Court's attention. However, we now know that this case is down to three plaintiffs. Four of the plaintiffs that were originally named as representative plaintiffs have been granted parole, and one has unfortunately passed away in prison. So we are left with three representative plaintiffs for the analysis of class certification in this case. Those are Plaintiffs Gilman, Fowler, and Gloria Olson. But that's still enough, right? I mean, it could be enough. I believe that this at least further exemplifies why there is insufficient information at this time to base a determination of class certification. Well, are they still class members, though? There hasn't been an amendment to the... They have not been formally dismissed from the case, correct, if that was... So is the argument that the fact that that's happened, are you saying that that erodes on the typicality, or what? How do we process that? I think it does erode on the typicality. It shows that each of these is an individualized process. And at any given time, that individualized process can change, and an individual... But even a loaded set of dice once in a while comes up sevens. So the fact, if you have a broken process, I'm not saying you do, I'm just saying, if they're challenging the process, the fact that sometimes people succeed despite a broken process doesn't speak to the question of whether or not your process is broken. So the fact that some people got parole, maybe they should have gotten parole earlier, maybe they could have done it more easily, I don't think that that really helps you that much. I understand, but I did feel it's appropriate to bring that up. It's certainly appropriate to bring it to our attention, but I think ultimately you need to speak about the merits. And I will, Your Honor. I mean, the merits of the class certification. Well, and maybe, too, when you're covering that, because you seem to be saying that it's premature, if it went back, what do you think the plaintiffs would have to show in order to get class certification? Because they seem to be wording this quite broadly in the sense that they're challenging the way the hearings are being done. See, I don't read that into the request at all. I read what they're challenging. In fact, the district court conceded that while the plaintiffs are in conclusory fashion indicating they're challenging the process and procedures, what I believe, and the district court indicated this and had to concede this, is that in fact they are, in order to analyze that question, you have to look to the individual experiences of the prospective parolees. You simply cannot answer these questions without looking and analyzing each individual potential parolee on the basis of the factors that are set forth in the statutory guidelines. This is a system that is vested with independent discretion in the commissioners. And as Greenholz has taught us, I mean, the very language of it. Well, they seem to want to alter how you do parole hearings, too, that you essentially can only talk about whether the person is dangerous at that particular moment. Or, you know, they seem to want to. But we can't worry about the merits here. They may never get that on the merits. But if, in fact, I mean, let's just say in everyone's parole hearing they were considering, I mean, let's just say they were considering that you didn't have remorse in everyone. And that turned out. And that if that were illegal, then everyone's parole hearing would be defective regardless that they would, you know, regardless, right? Well, perhaps, Your Honor, if we take that to its extension, I might agree. The problem is I haven't seen anything in the record, nor does this Court have before it anything in the record which would justify either a class or subclass of those persons. What we have is a series of literally shotgun allegations. Let's talk about subclasses. There were two amendments to the parole process. And one was in 88 or something, and one was in 99 maybe. But in any event, some of the class members claim an ex post facto problem. They got parole at a time prior to the two amendments. I'm sorry. They didn't get parole. They did not get parole. They were sentenced or accepted a plea bargain. Well, they were convicted or accepted a plea bargain. And on the assumption that the parole scheme was as it was, and then the voters by amendment had these two amendments. And one of them, as I recall, applies only to murderers, right? And that is the ability of the governor to override the parole board's determination, positive determination. And I believe the earlier one had to do with the presumptive reconsideration after a denial, right? Correct. Okay. So why aren't those subclasses prisoners who are affected by the first and the second and prisoners who are affected by the second but not the first? Because at this stage, first of all, the pleadings as they exist, those representative plaintiffs don't put forth those types of claims. So what we have is, and that's why I say, the unfortunate part here is that the broad nature of the allegations. I mean, plaintiffs have literally challenged each and every possible procedure. But in order to challenge the procedure, you have to look to the underlying merits of each of the parolees' petition for parole or potential parolees' petition for parole. So, for instance, and that's why — Proposition 9 I have, and I got my dates wrong by about 10 years, 2008. So I would think that all — since all these people are eligible for parole, their conviction date would clearly be before 2008. Why doesn't every single one of them have a Proposition 8 ex post facto claim? What the Court is referencing is the new Marcy's law that may extend the time for the hearing on the parole to 1 to 15 years. The difference in that, though, is thus far we have not seen the application of that in practice to say that, in fact, it has resulted in any type of practice or common standard that has somehow resulted in an ex post facto type of a violation. We don't have any evidence of that. There's no indication that that will occur. Moreover, under Marcy's law, all the potential parolees have the right to petition individually. I'm sorry. Let me just take the first point you made. Where are the class certification stage? How much evidence do they have to present in order to get the class certified? Isn't that enough if they are alleged? And then you get the discovery to find out whether there is — I think that Judge Callahan's recent case of Van All versus Countryman, where she cites two of the cases that the Ninth Circuit has kind of had a longstanding, I would say, accepted rule that the best practice of the district court is to take evidence on these issues and see whether there is commonality and typicality. And only in rare circumstances is it appropriate to actually accept class certification. And Your Honor cited the Doniger case as well as the Parra versus Bashes case. And both of those have been longstanding authority. But I would say, I would submit to the Court that this should be reviewed as a de novo review. We do not have the evidence. I frankly can't fashion that evidence. Perhaps after evidentiary — Well, if it is abusive discretion, do you lose? No. Because under the Parra case, as Your Honor cited in Van All, even if you use the deference and the abusive discretion standard, clearly we have a clear error of judgment in assaying the factors here because we don't have enough evidence to assay the factors. Judge Carlton's opinion is clearly conclusory. He takes the allegations and concludes it's common. That, as I understand it, it was not the purpose of the determination of class certification. We have multiple different sites in our brief as to why class certification, particularly in a case such as this, requires a vigorous analysis to determine whether, in fact, it would all be appropriate. What we have done is we have lumped all of them together, all the various claims, and I think a good way to examine that — But if the allegations were sufficient, subclasses could cure that later, correct? But you're saying if there are subclasses, the whole class can't be certified? Well, I think that — I say that the whole class cannot be certified at this time because it's overbroad. It simply is unworkable because — and I'll analogize this to the request for the injunctive relief. If we look at the blanket scope of the various requests for injunctive relief under the 23b2 standard, plaintiffs have again failed to show how any type of injunctive relief could possibly cure this without taking away the discretion of the commissioners. And I think the Valero case out of the Tenth Circuit, which we cite, is very instructive in that regard. Is Walmart — you have this Walmart en banc case that's pending that's the hugest class ever that was certified. And I'm not on that panel. But that being said, and we won't know what it says until it comes out, but let's just say that — I think it's sent by Kleinfeld and I think maybe the opinion by Pregerson. But anyway, they found — they upheld the certification of the class there. If the en banc panel were to end up that way, which I don't know what they're going to do, if they were to end up that way, would that be a problem for you? Because in that class — I mean, that's a huge class. And in that class there are people that are included that never even applied for promotions that are claiming that they were discriminated against. And so if that class were to stand, it would seem that that would — that that class has more problems than your class. I think in the past case law has rejected the fashioning of that type of a class. And I think this circuit in one of the business-related cases actually rejected a portion of a class that would not accept that. So — Well, I think to some extent you are fighting the hypothetical, but perhaps because you're not familiar with Wal-Mart, because maybe you — I'm not as up on Wal-Mart as I would have liked to have been. Just to sharpen the question, and just so you understand the way our law works, is this would be an en banc opinion. Sure. And if it comes out — if it were to come out, as Judge Callahan says it might — and, of course, it might come out that way. I wish I could tell you. I don't know, but I guess I do know. But I'm not going to say anything, but it's certainly one of two possibilities. So you have to accept for purposes of answering Judge Callahan's question that the Wal-Mart opinion, if it came out the way it did and if it were necessary to inconsistent with prior Ninth Circuit case law, would wipe out that case law. Your Honor — Is that complicated enough? You know, I follow you, and I thank you. And I think my response would be I would want — I understand the en banc ruling may be dispositive on this Court, depending on the actual legal ruling. What I would request is an opportunity to brief that in light of the Wal-Mart decision to see whether, in fact, it is sufficiently square on the issue. But since there is no Wal-Mart decision yet, and we don't — it's not yet public how it comes out, and we won't — We either — No. Well, I teach employment law, and every year they've wanted an update on Wal-Mart. And I've told them that they've had to wait, and it's been four years. So I wouldn't hold your breath. Are you suggesting that we hold this case in light of Wal-Mart? We would respectfully request, Your Honor, that the Court — Again, considering the possibility that it could come out as a three-judge panel came out, I'm — If it did, then we would ask that it be deferred. On the other hand, I still believe that in this case the appropriate basis would be to have an evidentiary basis for the particularized claims in this case, to remand to the district court, allow those findings to be made. We can't act on if requests, because then if we act on it, people will say, aha, this must reflect what the hearing will be. So you have to assume that the answer has to be the same regardless of what the actual decision will say. Are you — realistically, are you asking for a hold, or should we realistically hold this case for Wal-Mart and then give the parties a chance to brief in light of Wal-Mart one way or the other? If this panel believes that, in fact, Wal-Mart may be dispositive of the issues of class certification, yes. I think all you can know and all we can disclose is that there was a panel opinion that came out the way it did. Mm-hmm. That's all you — Right. Of course, it's always possible that the American opinion will be exactly like the panel opinion. Or different, right. And so I would suggest and respectfully request that this panel reverse and remand this case to the district court for further proceedings to take evidence on the issues of the various issues that are present and whether class certification is truly supported by the evidence in this case as recommended by, you know, a multitude of cases. And as we see, because the other result, Your Honor, is to — to, in fact, allow what is being a class action of a writ of habeas corpus to a State court case. We know — the N. Ray Lee case shows us that the multitude of different scenarios upon which parole is either granted or denied, and each of those scenarios is an example of why a class action is not appropriate in this case. But you do agree that if there were some impermissible factor — let's say they considered the race. Let me just use the easy-to-deal-with example. Let's say they — one of the considerations was race in deciding whether to grant parole. That would be a perfectly good subject of the 1983 action and subject to class certification, and we wouldn't have to think about even what the race of the prisoners were. If race is taken into account, it doesn't matter whether you're white or black or Hispanic or whatever, you should not be going through a process where race — not that this is what's going on here. So the same thing is true of some of the claims here, right? They say that the parole board is systematically considering factors it shouldn't be considering, like ancient conduct as opposed to current rehabilitative conduct. I believe, Your Honor, the contrast is between the Armstrong v. Davis case, in which you're correct if there was disability discrimination or some race-based claim, that that would provide that commonality. However, what plaintiffs are challenging in this case is the deference and weight and the discretion given to the commissioners to weigh those factors. And that's where the difference is. And it's not inappropriate to weigh those factors. They're just — the plaintiffs claim you're putting too much weight on one particular factor. And that's where I would suggest that it requires an individualized and particularized analysis. I would like — I know I'm over. I would like to save just a couple of minutes for rebuttals. I understand the last comment. You're saying don't send it back for an indentury hearing. Simply reverse the class certification, period. I believe it should be, and I would respectfully request it be reversed. Obviously, it's without prejudice. I need to ask you another question, though, too, even though, I mean, that's — and I'm asking leave of our chief judge to go over. But I think Rodriguez is another problem for you. The recent Rodriguez case, I think is another. That has to do with interpreting 23b-2. And it seems to — if we were to reverse, we would have to distinguish this case from Rodriguez. And, you know, sometimes, you know, right now, you know, there's a lot of precedent out there that I think was wrongly decided in this court, but I still have to follow it, and Rodriguez might be one. But how do we distinguish Rodriguez? I think that it's in the injunctive relief and how you fashion — the ability to fashion the injunctive relief. That the — and I don't have that case in front of me, but I have my notes from the case. And the difficulty that I saw in distinguishing that case was that you need the same relief. You need to be able to fashion relief that will work across the board. We don't have that here. Are we going to tell — for instance, I think that in the injunctive relief, how do we define — I think some of the language was sustained rehabilitation. Is this court going to then fashion relief that will define what sustained rehabilitation is and then direct on a case-by-case basis the district court to then fashion that injunctive relief and then review it? But in Rodriguez, there was a class of immigrants that sought relief from prolonged detention by having a bond hearing. And plaintiffs here are seeking to impose and enforce heightened or particularized standards for denying parole. So if you're saying that it would be unique to each prisoner, but the situation in Rodriguez seems like whether you get bond or not would be unique to each person. Their case had a statutory provision, and thank you for refreshing my recollection, that that case is more akin to the Armstrong case because there was a set practice of which there was a — what I would describe as the commonality, the common practice. It was the statutory provisions that if followed, they would get a bond hearing within a certain amount of time. And so it did not require the individualized breakdown and analysis that it does in the parole process, given all the factors. So I would respectfully submit that Rodriguez does not affect or impact this. It is more akin to Armstrong. Okay. Okay. Thank you. Thank you. Good morning. Monica Knox for the plaintiffs in this matter. We need for class certification only one legal issue that is common to all of them. Judge Kaczynski has pointed out quite the easiest, most objective one, which is the Prop 9, ex post facto challenge. It applies to every single member of the class because, as Judge Kaczynski noted, it was passed in November 2008, and every single member of the class was eligible long before that. It doesn't — the evidence has to be that it's adversely affecting members of the class, maybe not every single member of the class, but members of the class, because what I'm trying to say is there is no way for prisoners to get one- or two-year deferrals anymore. The least amount of time that a prisoner can get is three years. That's the basis of our ex post facto argument, and it applies to every single member of the class. And as this Court has repeatedly said — I'm sorry. Why does the Policy Council say there's no evidence that this has actually applied to any class member? I'm not sure. I think what he's talking about is there hasn't been evidence produced as to exactly what's happening at the hearings. And what Proposition 9 did is it changed it from a system that it was a one-year default and could go up to five years to a 15-year default that could go down to three years. Does that only apply to murderers? No. It applies to all prisoners with life terms. And so what we don't yet have evidence on is how many are getting 15-year deferrals, how many are getting 10-year. But what we know for sure is that everybody is getting at least a three-year deferral. The Board has no discretion to give anything less than that after Prop 9. And so to the extent that he's talking about we don't have evidence, it could only be evidence that would show where how many are three, how many are five, how many are seven, et cetera. So there right there is a common question of law which this Court has repeatedly said, most recently in Rodriguez, that that's all that's required for class certification. It's not all that we have. So we're all on the same page. In your view, the triggering date for ex post facto purposes would be the date of sentence? No, the date of the commission of the offense. The maximum term. Commission of the offense. Right. So you're committing the offense, and when you commit the offense, you calculate carefully what the consequences are. Yes. No, no. I understand there's a fiction involved there, but that's a fiction. Right. So the triggering event would then be the so, and of course, this all would have happened before 2008, would have had to have happened before 2008. The class is. What about, what about the other proposition, the one involving. 89? Do we have 89? It passed in November 88. And so it would be anybody who committed their offense before November 88. That would not. So don't you have people in that class that don't belong there? Many of them, including named plaintiffs. But many. It would not be everybody in the class, because there are people who are eligible for parole and have already had a parole hearing. But you've got a different kind of problem there as well, in that it is while a proposition, I mean, that proposition, whatever it was, says the governor can reverse the parole board, he needn't do so. And sometimes he doesn't. Sometimes. Are you used to the word? No. Okay. So how can you have a class when, have any of the named plaintiffs been in a situation where they began parole by the parole board and then had the governor reverse that determination? All but two of the named, they originally started with eight named plaintiffs. All but two of them were in that class. But now some have actually gotten parole, right? Some of them have. So what does that do to your typicality and commonality? It does nothing to it for a number of reasons. First of all, I would suggest, the Supreme Court has said, specifically in the parole context, in Garrity, which is cited in our brief, that there was only one named plaintiff in that case, and he ended up getting released, and it was a challenge to parole procedures. And the Supreme Court said it doesn't matter. It may be that he's not going to be your best plaintiff, but it doesn't get rid of class certification and it doesn't get rid of the case. So we have Supreme Court authority that says it doesn't matter that they've gotten released. But I would like to note something about the release because opposing counsel keeps talking about evidence. One of our due process claims is that the board is not considering, genuinely considering, parole suitability under the only relevant factor, which is current risk to public safety. But it seems to me that you're seeking a standard that isn't the current law. That I'm looking – I know I can't go to the merits, and I think that there are things that you're probably going to lose on under the merits. But the law isn't that they can only consider current risk to the public. With all due respect, it is. The California Supreme Court said in Lawrence quite clearly that under the statute – and the statute says it, but the Supreme Court made it clear because that was a fight going on in California for many years. And the California Supreme Court said in In re Lawrence that once you reach your minimum eligible parole date, that you have to be granted parole unless there is evidence that supports you are at current risk to public safety. All right. But what does the law say about what you can consider on that? I agree that the parole board and the governor can consider any factor that is relevant to public safety. And we have not argued – we have not contended in our complaint that they cannot consider something solely because it's old. We have not argued that. What we have complained that the board and the governor are doing is they are considering very old and static factors without any connection to the current state of affairs. Well, other than your statement of that, you know, I'm pretty sure that three strikers are not the same as murderers, and I – and in terms of how they look at it. I know that the gravamen of the complaint is on some level is no murderers are getting out because they're always – they're caught in this loop over that they keep getting punished for what they initially did. And you want to change that. But how does that affect – the three strikers, a lot of times their committing offense isn't very serious. It could be petty theft with a prior. Aren't – I don't know how those – you know, they're not the same group of people. Well, okay. First, I would note that there are no three strikers in the class certified. There are no three strikers who have yet become eligible for parole. And so there's nobody – there is not. All 10,000 are murderers? No. There are other life crimes that get you a life term which puts you before the board and the governor. Primarily, the other class is kidnappers, but it can include attempted murder. It includes train wrecking. I mean, there are – they're primarily people convicted of murder and kidnap. But there are no third strikers in the current class certified. But I'm not sure even if there were third strikers that it alters. The standard for third strikers when they get to the board is going to be the exact same standard. Now, it may be that it – we don't know that. But if third strikers were getting paroled regularly on the first time that they came up for parole, they couldn't be a part of the class, could they? They wouldn't qualify by definition because the definition of the class is you've already gone to your first hearing and been denied parole. So they wouldn't qualify under the definition of the class. Well, let's not get into third strikers. Okay. We've got the murderers. Okay. So what we are – I think that part of what the problem here is, is that what we're arguing about by its nature is not subjective. It's not tangible. The Court was posing a hypothetical about race. I think we could pose one that doesn't bring up other constitutional issues directly. For example, if what the board was doing, every time someone went to hearing and our allegation was that they were determining eye color and considering that in deciding whether the person should be granted parole or not. It seems clear to me, and what they were asking, our allegation is they ask eye color or determine eye color in every single case that comes before them. It seems to me clear that we could certify a class for purposes of everyone who's gone to a hearing and had that done to them, that we could certify a class of that, argue that it is not a proper consideration, and get an injunction that says the board is to stop determining eye color and relying on eye color as a factor. All right. But you don't have that here. Based on what? Based on what? The difference, I think. I'm sorry. Based on what? That it's not a factor that is relevant to the only thing they're supposed to be considering, which is current risks to public safety. I mean, who's to say? If the state courts have looked at the issue and they say, you know, we think eye color is okay. I mean, eye color is a little weird because it can be a proxy for race. Okay. There are not that many blue eyes. Yes. Right. African-Americans. Right. So it becomes difficult to come up with an example. But let's say it's not a proxy for race. That claim doesn't exist. If the state courts look at it and say, yeah, we think parole boards look at eye color and, you know, it's a little weird, but it's okay. We think it's rational to look at it. Can we second guess that? I think that you'd have to say it wasn't and didn't comply with due process, but I'm not sure we have to discuss that today, because that would only mean, if you're right, that this Court would uphold it because the state court said it was okay. What that would mean is we lose on the merits. But that's not what we're here today about. It may well be we're going to lose on the merits. So let's take we've talked about the two X plus factor claims. Now, those are very easy to talk about because they're really quite concrete and there are some on and off switches. But let's talk about some real factor in that you allege. Okay. They take into account. And let's see how that works. Okay. One of the things that we've claimed in terms of a due process violation is that the board is improperly relying on the number of years that the prisoner has served so that they have an arbitrary number of years that they're requiring a prisoner to serve before they will grant parole. Not related to whether they think he's a risk to public safety or not, but just because they want him to do more time. All right? We've alleged that. And in fact, I would suggest that the evidence that the defendants put before this Court yesterday in the request for judicial notice establishes just that. Of the five plaintiffs who have gotten out, one of them got out through court. The other four got out through the board and the governor. They had all had multiple grants that had been overturned by the governor several times. The factor that joins all of the four that got out recently is they all reached 30 years. And the factors that the governor and the board had been denying on them to deny them for the last almost 20 years that they had been eligible for parole were the factors. They were static, remote factors. The nature of the crime, his prior criminal history and stuff, they didn't change. The only thing that changed is the guy finally reached 30 years. And so they're arguing we haven't put evidence. I don't think evidence is necessary, but I would suggest they've actually produced evidence that is some evidence of one of our claims. Now, there's the, you know, they calculate the good time worked, you know, all of those type of things. Now, are you saying that that particular calculation that might go into when you reach the first eligible time, you're not challenging that? No. No. And that's the only thing that good time counts against? Well, because depending on when you went or whatever, when you're at a 25-year sentence became, you know, in the old days it used to be like at half the time. And then it changed to, what, 80 percent, then 85 percent? It's actually two-thirds currently. Yeah. It never was 85 percent except for third strikers. But it is, it's, that calculation of credit goes against when you will reach your minimum eligible parole date. So for a second-degree murder, you get 15 to life. The most credit you can get off of that is a third, so your minimum eligible parole date will be 10 years. Most people get there around 10 years. Some of them, if they screw up and lose some credit, they're not going to get there at 10 years. The most that they would have to wait would be 15 on the second. You heard our various questions to opposing counsel about the Wal-Mart case. Do you have a view on whether we ought to hold our case until Wal-Mart comes out? Yes. I do not. For you, it would be the converse question. Imagine that the in-bank opinion could be as Judge Kleinfeld's dissent in the panel. So, you know, that would be the question for you. I think that the Wal-Mart, the en banc decision in Wal-Mart would have to substantially change Ninth Circuit law on class certification in order to change this, including that it would probably have to change the standard of review, which is abusive discretion. And this Court has consistently held it to be an abusive discretion. And what Judge Callahan said last year was this. Well, I think that abusive discretion, it would seem to me, if the standard of review is abusive discretion, essentially it would have to be as a matter of law that Judge Carlton was wrong. Right. And one of the things that I think is really important about assessing that is one of the things that you, Judge Callahan, talked about in the country-wide case last year, which is the district court has all these tools available to it to manage things that either become unmanageable or, and including Rule 23 itself, gives the district court continuing jurisdiction to alter, amend, decertify the class. One of the things that is going on in the district court right now with this case is that there are multiple motions to intervene. And that comes because this, the class certification, is a big issue. And every motion to intervene gets the defendants to file an opposition to the intervention where they keep saying, well, the class is certified, so you should deny this motion to intervene, right? Then what? Are we going to have 10,000? If the class gets decertified, we're going to have 10,000 prisoners moving to intervene. And the defendants then won't have their objection that the class is certified, so you should deny the motion to intervene. That's unmanageable. There were already motions to intervene. Kennedy, I'm trying to do them a favor. Well, what I'm saying is the district, the reason this is a discretionary ruling, the reason that the courts and the rule itself make it a discretionary ruling is that the district court is in the best position to decide how to handle a case where many people's rights are potentially affected. And there were already ---- I think that I understood the appellants basically to say if there's subclasses, that really erodes on the typicality and the commonality. And what you're saying, am I understanding the converse, is you're saying if there are subclasses, the district judge can make the subclasses later, and you don't need to worry about that at the certification stage. I think that is true, too. The rule clearly gives them authority to do that. And it may be, for example, the ex post facto on the governor being able to review these. It's not going to apply to everyone. So maybe for purposes, maybe not until you get to relief, but for purposes of relief or proof or whatever, he ends up certifying the subclasses to that claim. But the point I'm just trying to make is that there's a reason we give the district court this kind of discretion. And the standard that you, Judge Callahan, talked about in Countrywide last year is did he consider an improper factor? They haven't argued that he did. Did he fail to consider any significantly material factor? They haven't argued that he did. They're arguing he didn't weigh them properly. But he went through, he identified the correct legal standard, and he went through each one carefully, and each one is absolutely consistent with Countrywide, with Rodriguez, with Walters v. Reno. All of them say, is there a common question here? And I don't think there can be any question, but there are multiple common questions here. Thank you. You're way over your time. Would you like to take a minute for rebuttal? I would like just a couple of minutes, Your Honor, maybe very briefly. He said one minute. One minute. You get zero or one, so that's your choice. Zero to 60 seconds, I'll take. Thank you, Your Honors. Your Honor, Judge Kaczynski, I would point you to a panel you joined in, in local joint executive board of culinary bartenders and trust fund, where you rejected the proposition that pure conclusory allegations were appropriate to certify a class and found that, in fact, it should be a de novo review. And we would respectfully submit that, in fact, that's exactly what Judge Carlton has done here. It's the same analogous type of findings that were made in that case. I would jump then, Your Honors, to this idea that what we have is the district court that has certified a class of all prisoners subject to parole with life terms and not granted parole. That is clearly an overbroad class certification. We're trying to deal with how to somehow fashion this. But I would submit that the general telegraph versus Falcon case of the Supreme Court gives us guidelines of why there is not commonality amongst the group and the particular class members given all of that time. With that, I would just simply say again, Your Honors, that this is going to break down into an individualized process. And that's the only way we can tell. Thank you very much. Thank you very much. The case is argued. Well, you know what? We're going to confer and either hold the case submitted or hold it. But I need to confer with my colleagues before we decide.  So thank you for the argument.
judges: Kozinski, Noonan, Callahan